# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**ELLA JONES**                                                                            **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO. 2:10cv99KS-MTP**

**REGIONS BANK; and**
**LOT SOLUTIONS, INC.**                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Compel Arbitration **[#4]** filed on behalf of the defendants. The court, having reviewed the motion, te response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

The plaintiff, Ella Jones, alleges that on December 30, 2005, she financed her purchase of a Toyota Avalon automobile through Regions Bank's predecessor, AmSouth Bank ("AmSouth"). Complaint at ¶4. According to the copy of her "Consumer Simple Interest Fixed-Rate Note and Security Agreement" ("Note") that is Exhibit A to her Complaint, her Note is part of Loan Number **************6697 ("6697 Loan"). She contends that in connection with her loan, she purchased credit disability insurance, but that AmSouth failed to provide her a certificate stating the terms of that insurance. Complaint at ¶4.

The plaintiff alleges that on March 15, 2007, the Social Security Administration

found her to be disabled and that as a result, on February 10, 2010, she submitted a credit disability claim through Regions. Complaint at ¶¶ 5-6. According to Jones, on March 24, 2010, Lot Solutions Inc., functioning as Program Administrator for Regions, sent Jones a letter declining to pay Jones' credit disability benefits because of the following coverage exclusion:

> Any disease, injury or condition of health for which the protected person was hospitalized or received medical or surgical treatment, including medication, consultation, advice or therapy within the twelve (12) months preceding the effective date of this contract, and its riders, and which caused, or contributed to, the loss within twelve (12) months following the effective date of this contract is not covered.

Complaint at ¶7 .

The plaintiff has sued Regions and Lot Solutions Inc., for breach of contract, breach of the duty of good faith and fair dealing and fraud, alternatively alleging that: (a) she was never provided an insurance certificate containing the above coverage exclusion; and/or (b) in any event, she is entitled to coverage because "according to the Social Security Administration[, she] did not become disabled until March 15, 2007, more than twelve (12) months following the effective date of her contract with Defendant Regions Bank and Lot Solutions." Complaint at ¶10.

The defendants argue that the plaintiff did not purchase credit insurance at all but, rather, she purchased an AmSouth Debt Protection Rider, for which she made monthly payments. That Rider "amends the promissory note, loan agreement or other agreement evidencing the loan, designated by the Loan # set out below…." The Loan Number on both the Rider and the Note is \*\*\*\*\*\*\*\*\*\*\*\*\*\*6697. Accordingly, the defendants argue that the Rider and attendant Note together represent one contractual agreement – the 6697 Loan.

The plaintiff attached her Note (minus certain attendant documents and disclosures) to her Complaint as Exhibit A, but alleges she was never given any document containing coverage provisions. ("Plaintiff was never advised in writing or verbally of the preexisting condition provision of [sic] which Defendant Lot Solutions [sic] is now relying"). Yet contrary to Jones's averments, the defendant points out that the plaintiff was in fact provided a copy of the Rider, as her signature appears prominently on the very first page, directly below language stating she has "received, read and understand" the Rider :

**Debt Protection Rider**

You agree that this Debt Protection Rider (this "Rider") amends the promissory note, loan agreement or other agreement evidencing the loan, designated by the Loan # set out below (the "Loan"). Debt protection for your Loan is provided in full consideration of, and is subject to, the continued payment of the Debt Protection Fee. The Debt Protection Fee will be collected as part of your monthly Loan payments. AmSouth Bank's liability for protection under this Rider is contingent upon the payment of the Debt Protection Fee, the occurrence of a Protected Event, and compliance with applicable activation requirements.

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED, READ AND UNDERSTAND THE IMPORTANT DISCLOSURES ON THIS PAGE, AND YOU AGREE THAT YOU VOLUNTARILY ELECT TO PURCHASE AMSOUTH DEBT PROTECTION.

| Primary Borrower: | | Co-Borrower: | |
|---|---|---|---|
| Signature: | *Ella M. Jones* | Signature: | *Jessie L Jones* |
| Printed Name: | ELLA M JONES | Printed Name: | JESSIE L JONES |
| Date of Birth: | September 13, 1949 | Date of Birth: | October 28, 1948 |
| Date: | December 30, 2005 | Date: | December 30, 2005 |
| Loan #: | 6697 | | |

APPLICATION #    7A11 MS

Further, the exclusion invoked by the Program Administrator, Lot, is prominently featured in the Debt Protection Rider contract:

| DISABILITY | Definition: | the Protected Person becomes and remains unable to perform the major duties of his or her occupation as a direct result of accidental bodily injury, sickness, or disease suffered during the term of this Rider, and the Protected Person is not working for wages or profit during the activation period of the disability and is under the continuous care of a licensed physician (other than one of you) |
|---|---|---|
| | Exclusions from Protection: | normal pregnancy or childbirth, including Caesarian Section; intentional self-inflicted injury; commission of a crime (including but not limited to use of illegal drugs); any disease, injury or condition of health for which the Protected Person was hospitalized or received medical or surgical treatment, including medication, consultation, advice or therapy within the 12 months preceding the Rider Start Date and which caused, or contributed to, the Disability within the 12 months following the Rider Start Date; the Protected Person has not been currently employed at a full time job and working at least thirty (30) hours per week for at least 6 consecutive months immediately prior to the date the Disability begins; either one of you receiving protection for another Protected Event under this Rider |

The defendants argue that dispositive of the instant motion, the Debt Protection Rider and associated Note – together, the 6697 Loan – contain mandatory arbitration provisions. Notice of those provisions is included in bold language in the Debt Protection Rider itself:

**STANDARD OF REVIEW AND ANALYSIS**

The arbitrability of a claim brought in federal court is governed by Section 2 of the Federal Arbitration Act (FAA) which provides, in pertinent part, that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (2007).

Controlling case law makes it clear that the FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Southland v. Keating*, 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998). This court has recognized the strong federal policy favoring enforcement of arbitration agreements, and is acutely aware of the Supreme Court's requirement "that [courts] 'rigorously enforce

agreements to arbitrate.'" *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

The FAA does not give a district court any discretion, "but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 & 4). By enacting the FAA, Congress has declared a national policy strongly favoring arbitration. *Municipal Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986).

A party to a contract containing an arbitration clause may not simply ignore the clause and resort to the courts. *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 245 (5th Cir. 1986). In fact, even when a party claims the contract itself was fraudulently induced, such a claim does not affect the parties' obligation to arbitrate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967).

As provided for in Section 2 of the FAA, the contract in dispute must evidence a transaction involving interstate commerce. The Supreme Court has recognized that Congress, in enacting the Federal Arbitration Act, meant to exercise the full extent of its powers under the commerce clause of the Constitution to ensure that the FAA applies to any arbitration contract involving interstate commerce. *Allied-Bruce Terminix Companies Inc. v. Dobson*, 513 U.S. 265, 130 L. Ed. 2d 753 (1995). The transaction in this case constituted a consumer credit transaction imbuing it with the necessary interstate character. Further, the plaintiff has not disputed that the transaction in question involves interstate commerce within the meaning of the FAA.

To determine whether parties should be compelled to arbitrate involves a two-step

inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Id.* at 258. This determination involves two additional considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.*

Arbitration clauses that apply to "all claims, demands, disputes or controversies of every kind or nature" are deemed to be very broad and cover all possible claims that might arise. *See Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986); *In re Sedco, Inc.*, 767 F.2d 1140, 1145 (5th Cir. 1985) ("[i]t is difficult to imagine broader general language than . . . 'any dispute'") (quoting *Caribbean S.S. Co. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264, 1266 (2nd Cir. 1979)). Any doubt concerning the scope of an arbitration clause must be resolved in favor of coverage. *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000); *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983); *Mississippi Ins. Managers, Inc. v. Providence Washington Ins. Co.*, 72 F. Supp. 2d 689, 695 (S. D. Miss. 1999).

The arbitration provisions in the 6697 Loan are very broad, requiring arbitration of:

> **Agreement to Arbitrate.** Except as expressly provided below, any controversy, claim, dispute or disagreement (whether asserted as a claim or a counterclaim, a "Claim") arising out of, in connection with or relating to (1) your business relationship with us; (2) the performance, interpretation, negotiation, execution, collateralization, administration, repayment, modification, or extension of this Agreement; (3) any charge or cost incurred pursuant to this Agreement; (4) the collection of any amounts due under this Agreement; (5) any alleged tort or other claim arising out of or relating in any way to this Agreement, Collateral under this Agreement, or any insurance or mechanical repair contract purchased pursuant to or in connection with this Agreement; (6) any breach of any provision of this Agreement; (7) any statement or representation made to you by or on behalf of us; or (8) any of the foregoing arising out of, in connection with or relating to any agreement which relates to this Agreement or any assignment of this Agreement, or any relationship created by or resulting from this Agreement, will be settled by binding arbitration under the Federal Arbitration Act ("FAA"). This agreement to arbitrate shall include any Claims involving our officers, directors, employees, agents, representatives, contractors, subcontractors, affiliates, successors or assigns, and any such Claims against any of those parties may be joined or consolidated with any related Claims against us in a single arbitration proceeding.

It is clear from the face of the Complaint that the plaintiff's claims address issues

covered by the arbitration provisions.  For example, the plaintiff's claims fall within the above-described arbitration provisions that apply to "the performance …of this Agreement…" and "any alleged tort or other claim arising out of or relating in any way to this Agreement…*." See Regions Bank v. Britt*, No. 4:09cv61-TSL-LRA, 2009 WL 3766490, *3 (S.D. Miss. 2009) ("[T]he arbitration agreement set forth in the Deposit Agreement which governs these other accounts broadly provides for arbitration of 'any dispute' 'arising before or after the effective date of this Agreement' and arising out of or relating to 'any account, any transaction, ... or your business, interaction or relationship with us.' In the court's opinion, this broad language extends to Brian Britt's claims in the underlying lawsuit"); *Regions Bank v. Herrington*, 630 F. Supp. 2d 722, 727 (S.D. Miss. 2009) ("[B]y signing the signature card for the subject account, Herrington contractually bound himself to arbitrate, not litigate, any disputes he might have with Regions").

The plaintiff admits she bound herself to contractual arbitration provisions and "does not claim that external legal constraints have foreclosed arbitration in this case." Rather, her only arguments against arbitration of the instant dispute are: (1) that scope of the provisions does not cover this dispute; and (2) that the arbitration provisions do not cover her claims against LOT SOLUTIONS, INC.

In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), the Supreme Court held that where, as here, the parties have contracted to arbitrate the issue of arbitrability, that issue is for the arbitrator, not a court:

> Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate….

> We agree with *First Options*, therefore, that a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.

*Id*. (citations omitted).

The plaintiff argues that "[h]ere, Defendants provide no clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." However, Jones and Regions did unequivocally contract to reserve the issue of arbitrability for the arbitrator, not a court. Specifically, the Note's arbitration provisions contain a "*First Options* clause" providing that the scope of claims that must be arbitrated includes "any controversy, claim, dispute or disagreement (whether asserted as a claim or a counterclaim, ("Claim") arising out of, in connection with or relating to:"

> (1) the performance, interpretation, …of this Agreement….
>
> [and]…
>
> [A]ny dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire Agreement, shall be decided by the arbitrator(s).

(Document [4-2] at 11-12.)

In the recent case of *Agere Systems, Inc. v. Samsung Electronics Co. Ltd.*, 560 F.3d 337,339 (5th Cir. 2009), the Fifth Circuit quoted with approval the Federal Circuit's approach for handling *First Options* issues:

> The Federal Circuit recently articulated an approach for handling such disputes, an approach the parties have addressed in this appeal. That court set out a two step process: (1) did the parties "unmistakably intend to delegate the power to decide arbitrability to an arbitrator," and if so, (2) is the assertion of arbitrability "wholly groundless." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006).

*Agere*, 560 F.3d at 340.

Here Jones and Regions did "unmistakably intend[,]" to delegate resolution of arbitrability issues to the arbitrator. *See Qualcomm*, 466 F.3d at 1371. Further, Regions and Lot's position on arbitrability is absolutely not "wholly groundless[,]", given the broad, any-dispute language of the arbitration provisions. *Id.* As a result, "there is a legitimate

argument that this arbitration clause covers the present dispute, and, on the other hand, that it does not." *Agere*, 560 F.3d at 341. Therefore, under *Agere*, "[t]he resolution of these plausible arguments is left for the arbitrator" and arbitration should be compelled. *Id.*

In her next attempt to escape *First Options*, the plaintiff argues that "the Mississippi Supreme Court has rejected application of a *First Options* Clause where the court found there was no underlying, enforceable agreement to arbitrate. *See AmSouth Bank v. Quimby*, 913 So. 2d 1145 (Miss. 2007)." However, neither the plaintiff's argument, nor the *Quimby* case itself, change the outcome here. In this case, there is an "underlying, enforceable agreement to arbitrate[,]" as the plaintiff has not challenged the enforceability of her arbitration contract, only its applicability to the subject matter of this dispute. *E.g.*, ([7] at 1-2) ("Plaintiff does not claim that external legal constraints have foreclosed arbitration in this case"). Further, this court is bound by *Agere*, which, for the reasons explained above, requires arbitration of arbitrability under these facts.

Finally, not only must the plaintiff arbitrate her claims against Regions, she also must arbitrate her claims against Lot. First, Jones must arbitrate her claims against Lot under the contract language extending the arbitration provisions to Regions' "agents, representatives, contractors, [and] subcontractors…." Lot is a contractor to Regions, serving as the Program Administrator for the Debt Protection Rider program, and is therefore covered by the foregoing language.

Further, the plaintiff must arbitrate her claims against Lot under the contract language extending the arbitration provisions to "any of the foregoing [Claims] arising out of, in connection with or relating to any agreement which relates to this Agreement … or any relationship created by or resulting from this Agreement …." The Rider is certainly an "agreement which relates to this Agreement[,]" as it is part of the Agreement as an

amendment thereto.  Further, the plaintiff's interaction with Lot is a "relationship created by or resulting from this Agreement … ."

Additionally, the plaintiff asserts a claim against Lot for breach of contract based on the 6697 Loan transaction that forms the basis of her state court complaint.  The plaintiff has accepted the benefits of her contract and is therefore estopped from avoiding the arbitration provisions contained therein.  A party whose lawsuit "makes reference to or presumes the existence of the written agreement" is obligated to arbitrate if the written agreement contains an arbitration clause.  *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).  This rule has been adopted by the Fifth Circuit in *Grigson v. Creative Artist Agency, LLC*, 210 F.3d 524, 529 (5th Cir. 2000); accord *Mississippi Fleet Card, L.L.C. v. Bilstat, Inc.*, 175 F.Supp.2d 894, 903 (S.D. Miss. 2001) ("To allow a plaintiff to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act").

Finally, although only the plaintiff and Regions are signatories to the 6697 Loan contract, Lot is mentioned therein as Program Administrator and the plaintiff has sued both Regions and Lot under the same contract – the 6697 Loan.  Accordingly, the plaintiff's actions have bound her to arbitrate with Lot.   See *Grigson v. Creative Artist Agency, LLC*, 210 F.3d at 528-29 (estoppel binding non-signatory through claim on common instrument with signatory)*; Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 266 (5th Cir. 2004) (same); and *Terminix Int'l, Inc. v. Rice*, 904 So.2d 1051, 1058 (Miss. 2004) (even though only the wife was the only signatory to the extermination contract at issue, because the husband's claims related to the contract, he was also required to arbitrate even though he was a non-signatory).

Once the court finds that the parties agreed to arbitrate, it must then determine

whether any legal constraints external to the parties' agreement foreclose the arbitration of the claims involved. The court can find no legal constraint which prevents this case from being submitted to arbitration. In fact, the plaintiff has stated that she "does not claim that external legal constraints have foreclosed arbitration in this case." *See* Doc.[7] at 1-2.

Once the court determines that a valid arbitration agreement exists and that the claims presented are arbitrable thereunder, the court has to make a decision as to the course of the litigation before it. The FAA contemplates that parties that are aggrieved by another party's failure to arbitrate under a written agreement, may file a motion to stay the trial of an action until such arbitration has been had in accordance with the terms of the agreement. *See*, 9 U.S.C. § 3. After arbitration, the parties can then file a request with the court to enforce the results of the arbitration. However, this court follows the practice of dismissing the present litigation without prejudice subject to the refiling of an enforcement action at the conclusion of arbitration, if such is necessary.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendants' Motion to Compel Arbitration **[#4]** is Granted and the parties are ordered to submit the matter to binding arbitration as per the agreement between the parties.

IT IS FURTHER ORDERED AND ADJUDGED that this matter is dismissed without prejudice subject to a refiling of a future separate action to enforce any arbitration award and that any other pending motions herein are denied as moot.

SO ORDERED AND ADJUDGED, this the 18th day of June, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE